IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL JONES, )<br>)<br>        **Plaintiff,**  )<br>)<br>   v.                    )<br>)<br>NANCY A. BERRYHILL, Deputy  )<br>Commissioner of Operations of  )<br>the Social Security            )<br>Administration,[1]               )<br>)<br>        **Defendant.** | No. 16 C 9113<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Ariel Jones's ("Plaintiff") claims for Child's Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 9] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 11] is granted.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. Procedural History

Plaintiff filed her applications in January 2013, alleging a disability onset date of January 1, 2005. (R. 97–98, 219–27.) Her applications were denied initially and again upon reconsideration. (R. 239, 248.) After filing a written request for a hearing, Plaintiff appeared on March 3, 2015 before an Administrative Law Judge ("ALJ") where Plaintiff appeared represented by counsel. (R. 268–307.) A vocational expert, Grace Gianforte, was also present at the hearing and testified. (*Id.*) On June 25, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 11–27.) The Appeals Council ("AC") denied review on July 20, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 5–7.)

## II. ALJ Decision

On June 25, 2015, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 11–27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2005, her alleged onset date. (R. 16.) At step two, the ALJ found that Plaintiff suffered from severe impairments of dysthymic disorder and decreased intellectual functioning. (R. 17.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the

2

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), (R. 22.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, subject to several limitations.[2] At step four, the ALJ concluded that Plaintiff has no past relevant work. (R. 26.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed including cafeteria attendant, laundry sorter, and bakery racker. (R. 26–27.) Because of this determination, the ALJ found that Plaintiff is not disabled under the Act. (R. 27.)

## DISCUSSION

### III.   ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ

---

[2] At this stage, the ALJ determined Plaintiff:
> can perform simple, routine, repetitive tasks that can be learned on short demonstration. She can make simple, basic work related decision. [Plaintiff] requires a static work setting that does not change and in terms of location, remains at the same job site. [Plaintiff] cannot perform work requiring more that [sic] simple, basic math computations. [Plaintiff] can only tolerate occasional contact with the general public, and can never perform fast pace production work, but only goal-oriented work.

(R. 24.)

3

considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

### IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.

1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V.     **Analysis**

Plaintiff alleges that the ALJ's decision should be remanded because: (1) she failed to find that Plaintiff's mental impairments meet or equal the severity level of Listing 12.05; (2) she improperly weighed the objective medical evidence, and (3) her credibility analysis was flawed. For the reasons that follow, the Court disagrees.

**A. Listing 12.05**

Listing 12.05, provides that the following criteria must be established for a finding of intellectual disability:

> [I]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Plaintiff asserts that she meets the requirements of this listing based on parts A, B, and D.

On March 7, 2013, Plaintiff presented for an examination with Dr. Mark Langgut, Psy.D., who performed a psychological assessment and administered a Wechsler Adult Intelligence Scale – IV test. (R. 161–65.) Plaintiff's received a composite score of 61 on the Verbal Comprehension scale and a Full Scale IQ score of 54. (*Id.*) Dr. Langgut remarked that Plaintiff appeared to put forth adequate effort and that her score appeared to be a valid indicator of her abilities. (R. 164.) In 2014, Dr. Ellen Rozenfeld, Psy.D., completed a medical interrogatory related to Plaintiff's mental impairments. (R. 174–85.) In her report, Dr. Rozenfeld stated that Plaintiff's full score IQ was inconsistent with the high school classes outlined in her record. (R. 185.) Moreover, Dr. Rozenfeld noted that a person with a functioning IQ of 54 would have Individualized Education Programs every three years documenting placement in special education for cognitive impairments, but Plaintiff did not. (*Id.*) She concluded that there was little objective support for Dr. Langgut's test results. (*Id.*)

To begin, Defendant responds that the ALJ did not error at step three because Plaintiff has failed to prove that she meets the "capsule" definition of Listing 12.05, specifically based on the findings of Dr. Rozenfeld. This argument amounts to an impermissible *post hoc* rationalization and cannot be used by this Court. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir.

2012) ("Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here").

But, even if the Court were to accept that Plaintiff meets the capsule definition of Listing 12.05, Plaintiff has still failed to demonstrate that she meets one of the subparts.

Subpart A requires "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(A). Plaintiff spends the entirety of her argument on this point arguing that she is dependent on her family to, among other things, help her care for her two young children, assist her with laundry, and pay her bills. Even if accepted, this argument only addresses half of the requirements for the subpart. Subpart A also requires that the use of standardized measures of intellectual functioning be precluded. Plaintiff has presented no evidence that this is the case. In fact, her record reflects that she gave good effort during her intelligence exam with Dr. Langgut in 2012. Accordingly, the Court finds that the ALJ does not meet the requirements of this subpart.

Plaintiff also claims she satisfies subpart B, which requires an IQ score below 59, based on the intelligence test administered by Dr. Langgut. While Plaintiff did have a documented full scale IQ score of 54, her argument ignores the fact that the ALJ discounted the findings of Dr. Langgut. In place of Dr. Langgut's findings, the ALJ adopted the opinion of Dr. Rozenfeld, who opined that Plaintiff's IQ score was not supported by her enrollment in "regular" courses and lack of routine Individualized Education Program. It was the duty of the ALJ to weigh this conflicting evidence and choose which source to give more weight. *Young v. Barnhart*, 362 F.3d 995, 1001–02 (7th Cir. 2004) (noting that ALJs are required to weigh conflicting medical evidence from medical experts and that the Court may not reweigh that evidence on review.)

Nonetheless, Plaintiff claims it was an error for the ALJ to rely on Dr. Rozenfeld's opinion because she had never personally examined her and because she failed to consider her low grade point average when making her determination. Essentially, Plaintiff argues that she would have accorded more weight to the findings of Dr. Langgut. But, the fact that Plaintiff may have weighed this evidence differently does not amount to a remandable error. *See Herr*, 912 F.2d at 181 (stating that where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner).

Finally, to meet the requirements of subpart D, a claimant must demonstrate a valid verbal score of 60 to 70 and "marked" limitations in two of the listed

9

categories. Although there is no dispute surrounding Plaintiff's verbal score on her intelligence test, 61, Plaintiff has failed to demonstrate "marked" limitation in: activities of daily living; maintaining social functioning; or maintaining concentration, persistence, or pace.

Plaintiff points to no evidence from medical providers that she would demonstrate "marked" limitations in any of these categories. Rather, she takes it upon herself to point to evidence which she believes is indicative of a "marked" limitations. This is an example of Plaintiff reweighing the evidence which neither she, nor this Court, are permitted to do. *Elder*, 529 F.3d at 413 (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported."); *see also Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) (stating a claimant's counsel must not play doctor). Accordingly, the Court will not disturb the ALJ's step three findings.

**B. Objective Medical Evidence**

Next, Plaintiff argues that the ALJ committed reversible error where she: (1) failed to seek clarification from Dr. Langgut and (2) gave great weight to the reviewing physicians. For the reasons that follow the Court disagrees.

First Plaintiff contends that the ALJ mishandled the objective medical evidence because she failed to re-contact Dr. Langgut to discuss inconsistency between his opinion and the opinion of Dr. Rozenfeld. (Pl.'s Br. at 13–14.) Dr. Langgut administered a Wechsler Adult Intelligence Scale – IV test, which revealed that Plaintiff had a full-scale IQ of 54. (R. 161–65.) Overall, Dr. Langgut found that

10

Plaintiff "displayed no areas of actual or relative intellectual strength and many areas of impaired ability." (R. 164.) In contrast to Dr. Langgut's opinion, Dr. Rozenfeld opined that Plaintiff's IQ results appeared to be inconsistent with lack of an Individualized Education Plan and her enrollment in "regular" classes. (R. 185.)

An ALJ is only required to re-contact doctors if the evidence is inadequate to allow the ALJ to determine whether the applicant is disabled. *Skinner*, 478 F.3d at 843 ("ALJs may contact . . . physicians for further information when the information already in the record is 'inadequate' to make a determination of disability. . . ."). This is not such a case. Here, the ALJ carefully evaluated the evidence, discussing the findings of each doctor, before according more weight to Dr. Rozenfeld's opinion—a decision she was entitled to make.[3] *Metzger v. Astrue*, 236 F. App'x 529, 532–33 (7th Cir. 2008) (holding that the ALJ did not need to re-contact the claimant's consultants to get more information about how they reached their findings); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Nor was there a need for the ALJ to order additional testing, particularly because "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Therefore, the Court rejects Plaintiff's arguments on this point.

---

[3] Plaintiff argues that the ALJ "ignored substantial evidence that actually supports the low IQ score such as Plaintiff's place at the very bottom of her graduating class or her low GPA score." *Pl.'s Mot.* at 13. First, it is clear that Dr. Rozenfeld reviewed Plaintiff's transcripts in conjunction with her evaluation; therefore, these findings were indirectly incorporated into the ALJ's finding when he adopted her opinion. (R. 184.) Moreover, an ALJ need not address every piece of evidence. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001)

Second, Plaintiff complains that the ALJ improperly assigned "great" weight to the findings of the two non-examining state agency consultants, both of whom found Plaintiff would be able to persist in full-time work. But nothing in the regulations states that an ALJ is not allowed to accord "great" weight to the findings of the state agency consultants based solely on their status as reviewing physicians. *See* 20 C.F.R. § 404.1527(f)(2)(i) (stating that state agency medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Thus, this argument fails.

Within her overall argument, Plaintiff also contends the ALJ improperly "cherry picked" evidence which was favorable to her ultimate disability determination. At the initial level, Dr. Lionel Hudspeth, Psy.D, determined that Plaintiff would have a no more than "moderate" difficulties in concentration, persistence, or pace. (R. 33.) At the reconsideration level, Dr. Michael Schneider, Ph.D., rated Plaintiff as having "marked" difficulties in this domain. (R. 48.) The ALJ later dismissed Dr. Schneider's finding on this point, stating that it was "inconsistent with [Plaintiff's] activities of daily living such as maintaining a household and caring for two young children." (R. 26.)

First, the Court notes again that it is the ALJ's duty to consider the conflicting medical evidence, then assign weight to the evidence she finds more persuasive, which is what the ALJ did here**.** Moreover, Plaintiff fails to explain what impact it would have had on her RFC or overall disability finding if the ALJ

had accepted Dr. Schneider's opinion. Accordingly, the Court finds that the ALJ did not err at this stage.

### C. Credibility

Finally, Plaintiff next argues that the ALJ improperly assessed her subjective symptom statements and credibility.[4] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535,

---

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Plaintiff's primary argument is that the ALJ's reasons for undermining her credibility are "weak." This is contrary to the evidence. The ALJ acknowledged that Plaintiff experiences difficulty with reading, writing, and understanding based on her testimony and the evidence of record. (R. 24–25.) But, she also noted that Plaintiff graduated from high school, was enrolled in several "regular" (as opposed to special education) courses, and took a number of advanced subjects including algebra, chemistry, and statistics. (R. 25.) In addition, the ALJ pointed out inconsistencies between Plaintiff's testimony and the record. For example, Plaintiff initially suggested she was unable to cook, but later testified that she was enrolled in a culinary program and cooked every other day. (R. 25, 182–84, 289–90.) Along the same lines, Plaintiff testified she is unable to take public transportation unless someone showed her where to go, but at her examination with Dr. Langgut she

14

claimed to be able to travel independently. (R. 25, 161, 286.) Similarly, she gave conflicting answers about whether or not she had and used a Facebook account. (R. 25, 298) Based on these inconsistencies, as well as the other evidence, the ALJ found that Plaintiff was not "entirely credible." (*Id*.). Plaintiff's main complaint is that the ALJ's discussion failed to consider facts such as her low grade point average and class rank, or the assistance she receives from family members, but as the Court has previously stated, an ALJ need not address every piece of evidence. *Zurawski*, 245 F.3d at 889. Here, the ALJ's credibility determination is otherwise supported by Plaintiff's activities of daily living, inconsistencies in her statements, and lack of objective medical evidence. Accordingly, the Court affirms the ALJ's credibly determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 9] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 11] is granted. Affirmed.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

*/s/ Maria Valdez*

**DATE:　　May 22, 2018**　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**